**2020 IL 125117**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125117)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
RASHEED CASLER, Appellant.

*Opinion filed October 28, 2020.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, and Michael J. Burke concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

Justice Karmeier dissented, with opinion.

## OPINION

¶ 1 Following a jury trial in the circuit court of Jackson County, defendant, Rasheed Casler, was convicted of obstructing justice by furnishing false information (720 ILCS 5/31-4(a)(1) (West 2014)). The appellate court affirmed. 2019 IL App (5th)

160035. This court allowed defendant's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. July 1, 2018)). We now reverse the judgments of the appellate and circuit courts and remand the cause to the circuit court for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was charged in a three-count information with possessing less than 15 grams of cocaine (count I) and less than five grams of methamphetamine (count II). Count III charged defendant with obstructing justice "in that the defendant (Rasheed Casler) knowingly, with the intent to prevent his arrest on warrants, provided false information to Sgt. Guy Draper in that he said his name was Jakuta King Williams." Only count III is at issue in this appeal.

¶ 4        Defendant was tried before a jury. The State's case, as it pertained to the obstructing justice charge, was essentially as follows. Carbondale police sergeant Guy Draper testified that on March 6, 2015, he and Patrolman Blake Harsy were both in uniform and on foot patrol at various hotels throughout Carbondale. At 12:45 a.m., they were on the second floor of the Quality Inn. As they approached room 210, the door quickly opened, and defendant emerged, looked at Sergeant Draper, and then went back into the room and slammed the door. Draper was not sure who defendant was but remembered him as being someone with whom he had dealings.

¶ 5        Sergeant Draper testified that when defendant slammed the door, Patrolman Harsy smelled the odor of burnt cannabis emanating from the room. Sergeant Draper approached the door and smelled it also. Draper knocked on the door, and Brianna Wyatt opened it. Standing in the doorway, Draper smelled a stronger cannabis odor. Draper saw two men whom he recognized and two women whom he did not recognize. He called for backup. The four individuals wanted to leave the room, but Draper did not allow them to do so.

¶ 6        Sergeant Draper testified that he did not see defendant in the room, and the bathroom door was closed. Draper explained that he had experienced people in hotel rooms hiding in bathrooms to evade apprehension and hide or destroy evidence. Still standing in the doorway, Draper knocked on the hotel room door, announced his office, and said, "Anybody in the bathroom, identify yourself."

¶ 7        Sergeant Draper testified that defendant responded essentially that he was defecating. Sergeant Draper again commanded defendant to identify himself, and defendant responded that his name was Jakuta King Williams. Draper asked defendant for identification. Defendant responded that he had no identification and said that he was from Virginia. Patrolman Harsy relayed the name to the dispatch center, but no record of a person with that name was found. Draper testified that he was initially fooled by the false name.

¶ 8        Sergeant Draper testified that he ordered defendant to open the door and said, if defendant flushed the toilet, Draper would enter the bathroom and seize him. Draper did not hear the toilet flush, and as far as he knew, defendant did not try to destroy evidence in the bathroom.

¶ 9        Sergeant Draper testified that defendant eventually emerged from the bathroom. Draper recognized defendant and remembered his name because he had previously arrested him. Draper asked defendant whether he was Rasheed Casler, and defendant did not respond. One of the officers relayed defendant's name to the dispatch center, which responded that defendant had an outstanding warrant. Sergeant Draper arrested defendant. Nothing interfered with Draper's ability to arrest defendant. Defendant did not attempt to resist or flee from Draper.

¶ 10       Sergeant Draper testified that he observed toilet paper in the toilet but did not see any human waste or contraband. During a postarrest search of the room, he and other police officers discovered defendant's green hoodie laying on a bed. They found in the hoodie a wallet with an Illinois identification card bearing the name of Rasheed Casler.

¶ 11       Patrolman Harsy testified. Both he and Sergeant Draper saw the hotel room door open and saw defendant emerge from the room, look at Sergeant Draper, and then reenter the room and shut the door. Harsy smelled the odor of burnt cannabis. Sergeant Draper knocked on the door, and one of the occupants, Brianna Wyatt, opened the door. Patrolman Harsy learned from Wyatt that the actual registered guest to that room had left. Harsy went downstairs to the manager's desk and spoke with the manager on duty. Harsy learned the name of the room's registered guest. Harsy returned to the room less than 10 minutes later. Harsy saw several officers standing in front of the door and heard a certain tone on the police radio, which

indicated that a name submitted to a police database search has an outstanding warrant. The officers then entered the room and took defendant into custody.

¶ 12 Shanique Lincoln testified as follows. She was one of the individuals with defendant in the hotel room. She could not remember many details from the investigation because she had been drinking tequila and smoking marijuana. Lincoln testified that she signed a written statement that night. However, she further testified that she "felt forced, pushed into it" because she was arrested that night for possession of cannabis and she felt threatened and frightened. Over objection, her statement was published to the jury. In the statement, Lincoln averred that defendant "looked out the door and said wo [*sic*] and closed the door."

¶ 13 The defense case consisted of defendant's testimony. Defendant arrived at the Quality Inn on that date shortly after midnight. He was drunk from tequila. He went to room 210 because his friends were there. He continued drinking tequila in the hotel room. He became nauseated and tried to find the bathroom. However, he opened the wrong door into the hallway. He opened the door and shut it. He did not step into the hallway and did not see any law enforcement in the hallway.

¶ 14 Defendant found the bathroom and began having diarrhea. Defendant heard someone ask who was in there. Defendant thought it was one of his friends joking with him, so he answered Jakuta King Williams. Defendant did not know there were police officers outside the bathroom door when he shouted that he was Jakuta King Williams. Defendant was not attempting to avoid being arrested by giving the false name. Defendant did not enter the bathroom to avoid arrest and did not intend to flush any contraband while in the bathroom. When defendant was told to open the door, he realized that it was the police. Defendant opened the door while still seated on the toilet. Defendant then recognized Sergeant Draper, who had arrested him in 2013. Defendant finished using the bathroom and exited without flushing the toilet.

¶ 15 At the close of trial, the jury acquitted defendant of the drug possession charges and found him guilty of the obstructing justice charge. On January 20, 2016, defendant was sentenced to 90 days in the Jackson County Jail, beginning that day, and two years of probation.

¶ 16 On July 1, 2019, the appellate court affirmed the judgment of conviction. The sole issue on appeal was whether the State proved defendant guilty of the offense of obstructing justice in that defendant, knowingly and with the intent to prevent his arrest on warrants, provided false information to Draper by identifying himself as Jakuta King Williams. 2019 IL App (5th) 160035, ¶¶ 23-25. Defendant maintained that the evidence was insufficient to prove that he had the requisite intent to prevent his apprehension. *Id.* ¶¶ 26-27. Rejecting this contention, the appellate court held that circumstantial evidence was sufficient to prove that defendant intended to avoid apprehension and gave Draper the false name in an effort to do so. *Id.* ¶¶ 28-33.

¶ 17 Defendant alternatively argued that the evidence was insufficient to support his conviction of obstructing justice because his giving of the false name did not materially impede the administration of justice. In support of his argument, defendant cited *People v. Taylor*, 2012 IL App (2d) 110222, which in turn relied on this court's decision in *People v. Comage*, 241 Ill. 2d 139 (2011). 2019 IL App (5th) 160035, ¶¶ 37-40. Rejecting this argument, the appellate court distinguished this court's decision in *Comage* and refused to follow *Taylor*. *Id.* ¶¶ 41-49. The appellate court held that the State was not required to prove that the false name furnished by defendant materially impeded his arrest. *Id.* ¶ 49.

¶ 18 Defendant appeals to this court. We note that defendant was sentenced in January 2016. Therefore, he could already have served his sentence. "However, the nullification of a conviction unquestionably may have important consequences to a defendant, whether or not the attendant sentence has been served. In such circumstances, the probability that a criminal defendant may suffer collateral legal consequences from a sentence already served precludes a finding of mootness." (Internal quotation marks omitted.) *People v. Brown*, 2013 IL 114196, ¶ 33; see *People v. Jordan*, 218 Ill. 2d 255, 263 (2006). Accordingly, because defendant may suffer collateral legal consequences, we properly consider his appeal.

¶ 19 II. ANALYSIS

¶ 20 Defendant asks this court to reverse his conviction of obstructing justice. Defendant contends that a conviction for obstructing justice by furnishing false information requires the State to prove beyond a reasonable doubt that the false

information materially impeded the administration of justice. Defendant further contends that the State did not prove that his conduct materially interfered with a police investigation. Prior to considering the sufficiency of the evidence, we must first determine whether the obstructing justice statute includes a material impediment requirement.

¶ 21                    A. Statute Includes Element of Material Impediment

¶ 22       Defendant argues that section 31-4(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/31-4(a)(1) (West 2014)), which criminalizes obstructing justice by furnishing false information, includes as an element of the offense that the false information materially impeded the administration of justice. However, the State argues that the statute does not include a material impediment requirement. Resolution of this issue requires us to construe the relevant statutory language. The construction of a statute is a question of law, which is reviewed *de novo*. *People v. Hunter*, 2013 IL 114100, ¶ 12; *People v. Zimmerman*, 239 Ill. 2d 491, 497 (2010).

¶ 23          1. Material Impediment Requirement Is Found in Statutory Language

¶ 24       The principles guiding our review are familiar. The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature. All other canons and rules of statutory construction are subordinate to this cardinal principle. *People v. Botruff*, 212 Ill. 2d 166, 174 (2004); *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002). The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. Also, a court presumes that the General Assembly did not intend absurdity, inconvenience, or injustice in enacting legislation. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23;

*Zimmerman*, 239 Ill. 2d at 497; *Brown*, 2013 IL 114196, ¶ 36; *Botruff*, 212 Ill. 2d at 174-75.

¶ 25 Section 31-4 of the Criminal Code provides in pertinent part:

"(a) A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly commits any of the following acts:

(1) Destroys, alters, conceals, or disguises physical evidence, plants false evidence, [or] *furnishes false information*[.]" (Emphasis added.) 720 ILCS 5/31-4(a)(1) (West 2014).

With an exception not pertinent here, obstructing justice is a Class 4 felony. *Id.* § 31-4(b)(1). Further, we observe that section 31-4 "is a codification of several unrelated provisions of the former statutes. [Citations.] *** Conspiracies or attempts to obstruct justice would be separate offenses under sections 8-2 and 8-4, respectively, of the [Criminal] Code." 720 ILCS Ann. 5/31-4, Committee Comments—1961, at 404 (Smith-Hurd 2010).

¶ 26 Both defendant and the State refer to the same definition of "furnish." When section 31-4 of the Criminal Code was adopted in 1961, Webster's defined "furnish" as "to provide or supply with what is needed, useful, or desirable." Webster's Third New International Dictionary 923 (1961).

¶ 27 Defendant argues that the plain meaning of the word "furnish" suggests reliance on the information provided; that is, the false information was needed or useful to prevent a person's apprehension or obstruct a person's defense or prosecution. Therefore, according to defendant, if the false information was not relied upon or, in other words, did not materially impede a police investigation, then the false information was not "furnished" as section 31-4(a) provides.

¶ 28 However, the State argues that the plain meaning of the word "furnish" does not include a material impediment requirement. The State maintains that a person obstructs justice simply when he or she knowingly provides or supplies false information.

¶ 29    The State's argument overlooks the complete definition of the word "furnish," which denotes necessity. See Webster's Third New International Dictionary 923 (2002) ("to provide or supply with what is needed, useful, or desirable"); Webster's New World College Dictionary 547 (3d ed. 1997) (same); The American Heritage Dictionary of the English Language 534 (1978) ("To equip with what is needed ***."). In providing synonyms, dictionaries explain that "furnish" "may apply to anything supplied *** but is used typically with tangible more or less permanent articles for use." Webster's Third New International Dictionary 924 (2002); see Webster's New World College Dictionary 547 (3d ed. 1997) ("furnish, as compared here, implies the provision of all the things requisite for a particular service, action, etc."); The American Heritage Dictionary of the English Language 534 (1978) ("*Furnish* refers primarily to the provision of basic necessities.").

¶ 30    To construe the word "furnish" as the State argues would ignore its clear denotation of necessity. "We may not so construe any word of a statute as superfluous or meaningless." *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 116 (1993); see, *e.g.*, *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 72; *People v. Diggins*, 235 Ill. 2d 48, 57 (2009).

¶ 31    In accord with this clear statutory language, we hold that a person obstructs justice when he or she knowingly provides or supplies false information that is necessary or useful to prevent the apprehension or obstruct the prosecution or defense of any person. In other words, the false information must constitute a material impediment to the administration of justice.

¶ 32            2. Material Impediment Requirement Is Found in Illinois Case Law

¶ 33    This court's case law has long established that section 31-4(a) of the Criminal Code requires a showing of material impediment. In *Comage*, 241 Ill. 2d 139, police officers saw the defendant remove a crack cocaine pipe from his pocket and throw it over a fence while running from them. The officers knew where the evidence was, it was out of their sight for only about 20 seconds, and they had no difficulty in recovering it. The defendant was convicted of obstructing justice by concealing evidence, and the appellate court affirmed the conviction. *Id.* at 140-43.

¶ 34     This court reversed the conviction. We stated at the outset that the specific issue presented was the meaning of the "concealment" clause of the obstructing justice statute. *Id.* at 140-41. The State argued that the defendant "concealed" the evidence by throwing it over the fence and placing it out of sight of the police officers. *Id.* at 145. However, our survey of the law revealed the following: "Courts have repeatedly rejected the proposition that temporarily removing contraband from the sight of police officers during a pursuit or arrest is sufficient, by itself, to constitute concealment for purposes of obstructing justice *** statutes." *Id.* We agreed with the case law surveyed and concluded as follows: "To construe the word 'conceal' as the State suggests would mean that essentially every possessory offense where the contraband is not in plain view would also constitute the felony offense of obstructing justice. We do not believe the legislature intended such a result." *Id.* at 148.

¶ 35     We further explained that this construction of the concealment clause is consistent with the purpose of the obstructing justice statute as a whole. We reasoned as follows:

> "Obstruction of justice is an attempt to interfere with the administration of the courts, the judicial system, or law enforcement agencies. 'The phrase "obstructing justice" as used in connection with offenses arising out of such conduct means impeding or obstructing those who seek justice in a court or those who have duties or powers of administering justice in courts.' [Citation.]" *Id.* at 149.

> We reasoned: "Thus, in enacting section 31-4, the legislature intended to criminalize behavior that *actually* interferes with the administration of justice, *i.e.*, conduct that 'obstructs prosecution or defense of any person.' " (Emphasis in original.) *Id.*; see also *id.* at 151 (Freeman, J., specially concurring) (agreeing that material impediment "is a necessary component of Illinois's obstructing justice statute").

¶ 36     The General Assembly can effectuate any change in statutory construction if it desires so to do. *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19; *City of Decatur v. Curry*, 65 Ill. 2d 350, 359 (1976). However, we find that the legislature has chosen not to amend section 31-4(a) contrary to *Comage* in the nearly 10 years subsequent to that decision. "It is axiomatic that where a statute has been judicially

- 9 -

construed and the construction has not evoked an amendment, it will be presumed that the legislature has acquiesced in the court's exposition of the legislative intent." *People v. Hairston*, 46 Ill. 2d 348, 353 (1970) (collecting cases); see *Heelan*, 2015 IL 118170, ¶ 19 (collecting cases). Therefore, after this court has construed a statute, that construction becomes a part of the statute until the legislature amends it contrary to that interpretation. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 343 (2008) (and cases cited therein).

¶ 37    After the decision in *Comage*, this court again examined, in a slightly different context, the issue of whether a defendant's false statement can interfere with the administration of justice. *People v. Baskerville*, 2012 IL 111056, involved another section of article 31 of the Criminal Code (720 ILCS 5/31-1(a) (West 2006)), which relates to interference with public officers. In *Baskerville*, the defendant's wife, Christine, drove past La Salle County Sheriff's Deputy John Dyke, who recognized her from previous contacts. The deputy believed that her driver's license had been suspended. While following the vehicle, the deputy received confirmation that Christine's license was suspended. Deputy Dyke followed the vehicle to Christine's home. He saw Christine exit the vehicle and walk toward her home. He asked Christine to return to her vehicle, but she walked into her house, and he did not see her again. The defendant emerged from the house. Deputy Dyke informed the defendant that Christine had been driving on a suspended license and asked the defendant to retrieve Christine. The defendant initially responded that he had been driving the vehicle and Christine was not at home. Defendant went inside the house, reemerged, and told Deputy Dyke that he did not know what was going on. The defendant invited the deputy to enter the residence to search for Christine. Deputy Dyke declined and told the defendant that he would send Christine a ticket in the mail. *Baskerville*, 2012 IL 111056, ¶¶ 4-7.

¶ 38    The defendant was charged with obstructing a police officer. *Id.* ¶ 13. Section 31-1(a) of the Criminal Code provides that "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2006). The defendant conceded that he provided false information to a law enforcement officer. "The point of contention [was] whether providing false information can constitute obstruction under the statute." *Baskerville*, 2012 IL 111056, ¶ 17.

¶ 39 After analyzing the meaning of the term "obstruct," we held that knowingly furnishing a false statement to an officer may constitute obstruction under section 31-1(a) where the statement interposes an obstacle that impedes or hinders the officer and is relevant to the performance of his or her authorized duties. *Id.* ¶¶ 1, 29. We explained that the term "obstruct" includes "conduct the effect of which impedes or hinders progress. Furnishing false information could thus be included within that definition, as it can undoubtedly interfere with an officer's progress." *Id.* ¶ 19.

¶ 40 Having concluded that furnishing false information may constitute obstructing a peace officer when a material impediment is established, we next considered whether the evidence was sufficient to support the defendant's conviction. *Id.* ¶ 29. We repeated that the defendant's false statement "only has legal significance if it *** actually impeded an act the officer was authorized to perform." *Id.* ¶ 35. We found that the defendant's false statement did not hamper or impede the performance of the law enforcement officer's duties. Therefore, we held that the defendant was not proved guilty beyond a reasonable doubt of violating section 31-1(a) of the Criminal Code. *Id.* ¶¶ 35-38.

¶ 41 In the course of our analysis, we found that sections 31-1 and 31-4 of the Criminal Code, both obstruction statutes, were related in that section 31-1 targets acts that obstruct police officers, while section 31-4 targets specific acts that constitute obstructive conduct, one of which is furnishing false information. *Id.* ¶ 28. Construed together, *Comage* and *Baskerville* firmly establish that a defendant's acts must be a material impediment and must be proved in a prosecution for obstructing justice.

¶ 42 The proposition that furnishing false information constitutes obstructing justice only if the false information materially impedes the administration of justice has been expressed by other authorities. "Giving a police officer a false identification can impede, obstruct, or interfere with the performance of his or her official duties *although responding to a police officer's request for identification with a false name is not always a criminal offense*." (Emphasis added.) 58 Am. Jur. 2d *Obstructing Justice* § 60, at 956 (2012) "Lying or intentionally misleading a police officer in the lawful discharge of his or her duty can constitute verbal 'obstruction' *although the officer must be actually hampered in some substantial way*."

(Emphasis added.) 58 Am. Jur. 2d *Obstructing Justice* § 58, at 954-55 (2012). See, *e.g.*, *Burdess v. State*, 724 So. 2d 604, 604 (Fla. Dist. Ct. App. 1998) (holding that the defendant's arrest for resisting an officer without violence, based on giving the arresting officer a false name, was unlawful because "[t]here was no testimony that the officer was impeded in any way by the giving of the original false information"); *Commonwealth v. Paquette*, 62 N.E.3d 12, 21-22 (Mass. 2016) (reversing defendant's conviction of violating witness intimidation statute, holding that statements are not misleading within the meaning of the statute "unless, given the information known to police at the time the statements were made, the statements reasonably could have led police to pursue a materially different course of investigation. The Commonwealth presented no direct evidence, however, that the defendant's statements *** reasonably could have led police astray in this manner."); *Ruckman v. Commonwealth*, 505 S.E.2d 388, 390 (Va. Ct. App. 1998) (reversing conviction of obstruction of justice, holding that, although defendant's conflicting statements may have frustrated the police officer's investigation, "the statements did not oppose, impede, or resist [the officer's] efforts to conduct an investigation. Therefore, [the defendant] did not 'obstruct' [the officer] in the performance of his duties.").

¶ 43    Our appellate court in *Taylor*, 2012 IL App (2d) 110222, correctly applied these principles as expressed in *Comage* and *Baskerville*. In *Taylor*, a police officer recognized the defendant upon seeing him on a street. The officer not only knew the defendant but also had a photograph of defendant in his squad car, along with photographs of other individuals wanted on outstanding warrants. The officer approached the defendant and asked for identification, although he knew defendant's identity. The defendant gave the officer a false name. The officer ran the name through the police computer system, which indicated that the name was false. Defendant was arrested for obstructing justice by furnishing false information. At trial, the prosecution and the defense agreed that the entire encounter lasted between 5 and 10 minutes. *Id.* ¶¶ 3-5.

¶ 44    Before the appellate court, the defendant sought to apply the reasoning of *Comage* to his case. The defendant argued that his actions could not amount to obstruction of justice because they did not materially impede the arresting officer's investigation. The defendant observed that the entire encounter with the arresting officer lasted between 5 and 10 minutes, despite the initial false information

- 12 -

regarding his identity. *Id.* ¶¶ 9-11. The State responded that *Comage* was distinguishable because it involved a defendant's attempted concealment of evidence rather than the giving of false information to a police officer. *Id.* ¶ 12.

¶ 45     The appellate court in *Taylor* reversed the defendant's conviction. The court recognized that "the relevant inquiry under *Comage* is whether, and to what extent, the defendant's actions actually interfered with the police investigation." *Id.* ¶ 14. The court rejected the proposition that "false statements always rise to the level of materially impeding a police investigation." *Id.*

¶ 46     The *Taylor* court also discussed our *Baskerville* decision and recognized our holding in *Baskerville* that false information could constitute obstruction of a peace officer only if it actually impedes a law enforcement officer in the performance of his or her official duties. *Id.* ¶¶ 15-16. The *Taylor* court viewed *Baskerville* as confirming that a relevant issue in a prosecution for obstructing justice "is whether the defendant's conduct actually posed a material impediment to the administration of justice." *Id.* ¶ 17.

¶ 47     The *Taylor* court highlighted that the entire encounter between the defendant and the police officer lasted between 5 and 10 minutes, the officer's delay in checking the defendant's false name did not significantly delay defendant's arrest, and the defendant's lies did not pose any material risk that the officer would have mistakenly allowed the defendant to go free. *Id.* ¶¶ 17-18. "Thus, applying the same standard used in *Comage* and *Baskerville*, Taylor's false statements did not actually interfere with or materially impede the police investigation." *Id.* ¶ 17. The *Taylor* court correctly recognized that this court had incorporated a material impediment requirement into section 31-4(a) of the Criminal Code, which includes obstructing justice by furnishing false information.

¶ 48                 B. Material Impediment Requirement Applies in the Instant Case

¶ 49     In the case at bar, however, the appellate court distinguished this court's decisions in *Comage* and *Baskerville* and disagreed with *Taylor*. The appellate court maintained that the *Comage* court limited its recognition of a material impediment requirement to the concealment clause of section 31-4(a) of the Criminal Code. 2019 IL App (5th) 160035, ¶¶ 41, 45. Similarly, the appellate court

maintained that the *Baskerville* court limited its recognition of a material impediment requirement to section 31-1 of the Criminal Code. *Id.* ¶¶ 43, 46. The appellate court accused the *Taylor* court of improperly expanding the holdings of *Comage* and *Baskerville*. *Id.* ¶¶ 45-46.

¶ 50    In support for its reasoning, the appellate court discussed *People v. Davis*, 409 Ill. App. 3d 457 (2011). The *Davis* court reviewed a conviction of obstructing justice by furnishing false information. Citing *Comage*, the defendant argued that she did not obstruct justice because her furnishing of false information did not materially impede the police investigation. *Id.* at 461. The *Davis* court distinguished its case from *Comage*, reasoning that *Comage* addressed the concealment clause, while *Davis* involved furnishing false information. *Id.* at 462; see 2019 IL App (5th) 160035, ¶¶ 47-48.

¶ 51    In the case at bar, after discussing *Davis*, the appellate court concluded as follows: "Despite the factual similarities between this case and *Taylor*, for the same aforementioned reasons as the court in *Davis*, we refuse to follow *Taylor*, and we decline to expand the *Comage* decision in the manner suggested by the defendant." 2019 IL App (5th) 160035, ¶ 49. We disagree.

¶ 52    As we explained earlier in this opinion, the *Comage* court's recognition of a material impediment requirement applies to section 31-4(a) of the Criminal Code and is not limited to the concealment clause. See 720 ILCS 5/31-4(a)(1) (West 2014) ("A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly commits any of the following acts: (1) Destroys, alters, conceals, or disguises physical evidence, plants false evidence, [or] furnishes false information[.]"). Lacking the benefit of this court's guidance in *Baskerville*, the *Davis* court erred in limiting the holding in *Comage* to concealing evidence. Accordingly, *People v. Davis*, 409 Ill. App. 3d 457 (2011), is hereby overruled on this point.

¶ 53    In this case, the appellate court expressly agreed with the reasoning of *Davis* in upholding defendant's conviction. Based on our analysis herein, we likewise reject the analysis of the appellate court. We hold that, in a prosecution for obstructing justice by furnishing false information, the State must prove that the false information materially impeded the administration of justice. Therefore, we reverse

defendant's conviction and remand the cause for further proceedings.

¶ 54                          C. Double Jeopardy: Sufficiency of the Evidence

¶ 55    Defendant contends that the evidence failed to establish that the giving of the false name materially impeded the administration of justice. In response, the State contends that, even if the obstructing justice statute does include a material impediment requirement, defendant's conduct actually did materially impede the administration of justice. We must consider this issue to remove the risk of subjecting defendant to double jeopardy. *People v. McKown*, 236 Ill. 2d 278, 311 (2010); *Diggins*, 235 Ill. 2d at 58.

¶ 56    The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy." U.S. Const., amend. V; see *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) (double jeopardy clause applicable to the states through the fourteenth amendment (U.S. Const., amend XIV)). The Illinois Constitution likewise provides that no person shall "be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, § 10. Constitutional double jeopardy analysis distinguishes between judgments that reverse convictions based on trial error and judgments reversing convictions based on evidentiary insufficiency. *Burks v. United States*, 437 U.S. 1, 14-15 (1978); *People v. Drake*, 2019 IL 123734, ¶ 20; *People v. Mink*, 141 Ill. 2d 163, 173 (1990).

¶ 57    The double jeopardy clause does not preclude retrial of a defendant whose conviction is overturned because of an error in the trial proceedings leading to the conviction. *Nelson*, 488 U.S. at 38; *Burks*, 437 U.S. at 14; *Mink*, 141 Ill. 2d at 173. The United States Supreme Court has described "trial error" as follows:

"[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." *Burks*, 437 U.S. at 15.

Pertinent here, a second trial is permitted when a conviction is reversed because of a posttrial change in law. Such a reversal is analogous to one for procedural error and therefore does not bar retrial. *United States v. Ford*, 703 F.3d 708, 710 (4th Cir. 2013); *Osborne v. District of Columbia*, 169 A.3d 876, 887 n.12 (D.C. 2017) (retrial is allowed "where a post-trial change in the law has altered the elements of proof"); 6 Wayne R. LaFave, Criminal Procedure § 25.4(b), at 837-38 (4th ed. 2015) ("An appellate court's decision to reverse a conviction due to its finding that the court applied the wrong legal standard or misinstructed the jury will also allow retrial under the correct legal standard.").

¶ 58        In *Bravo-Fernandez v. United States*, 580 U.S. ___, 137 S. Ct. 352 (2016), Justice Ginsburg, speaking for a unanimous Court, explained the rule allowing retrial to correct trial error as follows:

> "When a conviction is overturned on appeal, [t]he general rule is that the [Double Jeopardy] Clause does not bar reprosecution. [Citation.] The ordinary consequences of vacatur, if the Government so elects, is a new trial shorn of the error that infected the first trial. This 'continuing jeopardy' rule neither gives effect to the vacated judgment nor offends double jeopardy principles. Rather, it reflects the reality that the criminal proceedings against an accused have not run their full course. [Citation.] And by permitting a new trial post vacatur, the continuing-jeopardy rule serves both society's and criminal defendants' interests in the fair administration of justice. It would be a high price indeed for society to pay, we have recognized, were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. [Citation.] And the rights of criminal defendants would suffer too, for it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." (Internal quotation marks omitted.) *Id.* at ___, 137 S. Ct. at 363.

Accord *Nelson*, 488 U.S. at 38-39.

¶ 59        In contrast, United States Supreme Court case law has "recognized an exception to the general rule that the Double Jeopardy Clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the

- 16 -

proceedings below." *Id.* at 39. When a reviewing court reverses a defendant's conviction on the sole ground that the evidence was insufficient to sustain the jury's verdict, the double jeopardy clause bars a retrial on the same charge, and the only proper remedy is a judgment of acquittal. *Id.*; *Burks*, 437 U.S. at 18; *Mink*, 141 Ill. 2d at 173-74.

¶ 60 Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *People v. Cunningham*, 212 Ill. 2d 274, 278-79 (2004) (noting adoption of *Jackson* formulation). In the context of double jeopardy, if the totality of the evidence presented at a defendant's first trial was sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt, no double jeopardy violation is created on retrial. However, if no rational trier of fact could so find, then the defendant may not be subjected to a second trial. *McKown*, 236 Ill. 2d at 311.

¶ 61 In the case at bar, we unequivocally construe section 31-4(a)(1) of the Criminal Code to include a material impediment requirement. Therefore, to prove a defendant guilty of the offense of obstructing justice by furnishing false information, the State must prove beyond a reasonable doubt that the false information must have materially impeded the administration of justice. See 720 ILCS 5/31-4(a)(1) (West 2014).

¶ 62 However, the record in this case plainly shows that the trial court categorically excluded any evidence relating to the essential element of a material impediment. Defendant was charged with obstructing justice by knowingly (1) providing false information to Sergeant Draper (2) with the intent to prevent his arrest on warrants. Correspondingly, the jury was instructed that it should find defendant guilty of obstructing justice if those two elements had been proved beyond a reasonable doubt. The charge and the jury instructions did not identify and include as an element of the offense that the false information furnished by defendant materially impeded the administration of justice. The jury found defendant guilty of obstructing justice without ever considering whether defendant's furnishing of a false name materially impeded the administration of justice.

¶ 63    At defendant's trial, while defense counsel was cross-examining Patrolman Harsy, the following colloquy took place:

"Q. Did Officer Draper indicate there was any doubt in his mind that the man in the bathroom was Rasheed Casler?

A. When he originally saw him, he said he thought he might know him.

Q. But did he indicate to you that there was any doubt as to Mr. Casler's identity?

A. Once he remembered his name, no.

Q. Okay. So Officer Draper's ability to arrest Mr. Casler was not impeded upon; is that correct?

MS. BLOMER [(PROSECUTOR)]: Objection. It's irrelevant.

MR. WEPSIEC [(DEFENSE COUNSEL)]: No, Judge—

THE COURT: Wait a minute. You don't get to argue. She gets to state her objection. Your objection, Ms. Blomer?

MS. BLOMER: It's irrelevant to the charges for which the defendant is charged. There is no requirement that—

THE COURT: The objection is sustained.

MR. WEPSIEC: Judge—

THE COURT: Next question."

¶ 64    The aforementioned colloquy clearly shows that (1) defense counsel attempted to elicit testimony that defendant's furnishing the false name did not materially impede the administration of justice, (2) the prosecutor objected and stated that the evidence was irrelevant because there was no material impediment requirement in the obstructing justice statute, and (3) the court sustained the prosecutor's objection. Once the prosecutor's objection was sustained, evidence of material impediment was excluded from the trial, and the jury was never instructed on the

material impediment requirement. Based on the absence of evidence of material impediment, defendant contends that the evidence is insufficient to convict him.

¶ 65 We determine that the evidence was sufficient under the instruction that was given, rather than the instruction that would otherwise be given on remand. *United States v. Houston*, 792 F.3d 663, 669-70 (6th Cir. 2015); *United States v. Wacker*, 72 F.3d 1453, 1464-65 (10th Cir. 1995); *United States v. Weems*, 49 F.3d 528, 530-31 (9th Cir. 1995). Here, the State had no reason to introduce evidence regarding a material impediment requirement because, at the time of trial, this court had not yet held that the government was required to prove that element with regard to the furnishing of false information. See *United States v. Pearl*, 324 F.3d 1210, 1214 (10th Cir. 2003); *United States v. Gonzalez*, 93 F.3d 311, 323 (7th Cir. 1996) (citing *Wacker*, 72 F.3d at 1465); *Weems*, 49 F.3d at 531.

¶ 66 More fundamentally, the error that manifested at defendant's trial is, despite the nomenclature employed by the parties, more akin to trial error than to the sufficiency of the evidence. *Gonzalez*, 93 F.3d at 323. Any insufficiency in proof was caused by the subsequent change in the law and not the State's failure to present sufficient evidence. *United States v. Ellyson*, 326 F.3d 522, 533 (4th Cir. 2003). Courts considering this issue agree that where a reviewing court determines that the evidence presented at trial has been rendered insufficient only by a posttrial change in the law, double jeopardy concerns do not preclude the government from retrying the defendant. *United States v. Davies*, 942 F.3d 871, 874 (8th Cir. 2019); *Ford*, 703 F.3d at 711; *Wacker*, 72 F.3d at 1465; *Weems*, 49 F.3d at 530-31.

¶ 67 Therefore, we remand the cause to the trial court for further proceedings. However, we note that nothing in this opinion should be construed as a finding of defendant's guilt that would be binding upon remand. See, *e.g.*, *McKown*, 236 Ill. 2d at 314; *Diggins*, 235 Ill. 2d at 58.

¶ 68                                   III. CONCLUSION

¶ 69 We unequivocally construe section 31-4(a)(1) of the Criminal Code to include a material impediment requirement. Therefore, to prove a defendant guilty of the offense of obstructing justice, the State must prove beyond a reasonable doubt, as pertinent here, that (1) the defendant knowingly furnished false information, (2) the

defendant did so with the intent to prevent the apprehension of any person, and (3) the false information must have materially impeded the administration of justice. See 720 ILCS 5/31-4(a)(1) (West 2014). Here, the trial court sustained the prosecutor's objection and excluded any evidence relating to the essential element of a material impediment, which prevented the jury from being instructed on that issue. For this reason, defendant's conviction of obstructing justice must be reversed. Therefore, we reverse the judgments of the appellate court and the circuit court of Jackson County and remand the cause to the circuit court for further proceedings.

¶ 70       Judgments reversed.

¶ 71       Cause remanded.

¶ 72       JUSTICE KILBRIDE, dissenting:

¶ 73       Here, defendant was charged with, and convicted by a jury of, obstructing justice "in that the defendant (Rasheed Casler) with the intent to prevent his arrest on warrants, provided false information to [a police officer] in that he said his name was Jakuta King Williams." The appellate court affirmed his conviction. 2019 IL App (5th) 160035, ¶ 49.

¶ 74       Defendant's petition for leave to appeal asked this court "to resolve a simple issue that has caused [an appellate court] district split: must a material impediment be proven in a conviction for obstruction of justice for furnishing false information." As the parties' arguments demonstrate, this appeal fundamentally asks whether this court's holding in *People v. Comage*, 241 Ill. 2d 139, 150 (2011), that a material impediment must be proven to obstruct justice by *concealing evidence*, should be extended to the obstruction of justice by *furnishing false information*. The Fourth and Fifth Districts of the Appellate Court answered that question in the negative, concluding that *Comage*'s rationale applies only to obstruction by concealment of evidence. 2019 IL App (5th) 160035, ¶¶ 44-45; *People v. Gordon*, 2019 IL App (5th) 160455, ¶ 27; *People v. Davis*, 409 Ill. App. 3d 457, 458 (4th Dist. 2011). In contrast, the Appellate Court, Second District,

extended *Comage* to obstruction charges based on the furnishing of false information. *People v. Taylor*, 2012 IL App (2d) 110222, ¶¶ 17-19.

¶ 75    Here, the majority effectively adopts the minority position of the Second District, extends *Comage*, and holds that, "in a prosecution for obstructing justice by furnishing false information, the State must prove that the false information materially impeded the administration of justice." *Supra* ¶ 75. Because the Illinois obstruction statute contains no express requirement for material impediment and *Comage*'s narrow holding applies to a different part of that statute, I cannot agree. Accordingly, I respectfully dissent.

¶ 76    In relevant part, section 31-4 of the Criminal Code of 2012 (Criminal Code) provides that an individual commits the offense of obstruction of justice "when, with intent to prevent the apprehension or obstruct the prosecution of or defense of any person, he or she knowingly *** furnishes false information." 720 ILCS 5/31-4(a)(1) (West 2014).

¶ 77    As the State correctly observes, the "furnishes false information" prong of the obstruction statute contains no material impediment requirement. In fact, those words appear nowhere in the applicable statutory language. Typically, this absence would end the statutory analysis. See *In re Andrew B.*, 237 Ill. 2d 340, 352 (2010) (recognizing "the fundamental principle of statutory construction that this court cannot read into the statute additional elements not intended by the legislature")

¶ 78    The majority here, however, discerns a material impediment requirement after reviewing dictionary definitions and synonyms of the word "furnish" (*supra* ¶¶ 29-30) and concluding that those sources demonstrate a "clear denotation of necessity" (*supra* ¶ 30). In turn, the majority opines that this implied necessity means that the false information must be "necessary or useful" to prevent the apprehension or obstruct the prosecution or defense of any person. *Supra* ¶ 31.

¶ 79    In my opinion, the majority needlessly complicates a simple statutory provision and misconstrues its straightforward language. Contrary to the majority's analysis, the statutory term "furnishes" *refers to the false information* and not the apprehension, prosecution, or defense of another person. The only thing "necessary" for purposes of committing obstruction of justice under that provision is the knowing provision of false information. As the State asserts, a person

obstructs justice when, with the requisite intent, he or she knowingly provides or supplies false information.

¶ 80        The majority next turns to the core dispute in this case and the source of disagreement in the appellate court—whether our decision in *Comage* should be extended to the "furnishes false information" prong of the Illinois obstruction statute. Notably, *Comage* concluded that "a defendant who places evidence out of sight during an arrest or pursuit has 'concealed' the evidence for purposes of the obstructing justice statute if, in doing so, the defendant actually interferes with the administration of justice, *i.e.*, materially impedes the police officers' investigation." *Comage*, 241 Ill. 2d at 150.

¶ 81        In that case, Comage was charged with obstruction of justice under the "conceals evidence" prong of the obstruction statute based on his conduct of throwing a crack pipe and push rod over a fence while being pursued by police officers. The officers saw Comage throw those items and were able to walk around the fence and recover them within approximately 20 seconds after he discarded them. Before this court, Comage argued that he did not "conceal" the crack pipe and push rod within the meaning of the obstruction statute. Accordingly, this court began its analysis in *Comage* explaining that "we must first determine the meaning of the word 'conceal' as it is used in the obstructing justice statute." *Comage*, 241 Ill. 2d at 143-44.

¶ 82        We next reviewed the dictionary definition of the word "conceal" and also observed that "[c]ourts have repeatedly rejected the proposition that temporarily removing contraband from the sight of police officers during a pursuit or arrest is sufficient, by itself, to constitute concealment for purposes of obstructing justice or tampering with evidence statutes." *Comage*, 241 Ill. 2d at 144-45. We explained our concern with allowing an obstruction of justice conviction in instances when an offender is being pursued by arresting officers and places contraband out of sight because it "leads to harsh and absurd results that cannot reasonably be within the ambit of legislative intent." *Comage*, 241 Ill. 2d at 147.

¶ 83        We also rejected the notion that every instance of concealing evidence, by itself, was sufficient to sustain a conviction because it "would mean that essentially every possessory offense where the contraband is not in plain view would also constitute the felony offense of obstructing justice." *Comage*, 241 Ill. 2d at 148. Consistent

- 22 -

with these concerns, we concluded in *Comage* that, "[b]ecause defendant did not 'conceal' the crack pipe and push rod within the meaning of the obstructing justice statute, the State failed to prove him guilty of that offense beyond a reasonable doubt." *Comage*, 241 Ill. 2d at 151.

¶ 84       None of the justifications or concerns this court relied on in *Comage* to require proof of a material impediment in a concealing-evidence obstruction case support extending its holding to the furnishing of false information in this case. As the Appellate Court, Fifth District, determined, *Comage* "was decided within the parameters of the supreme court's sole mission to determine the meaning of the word 'conceal' as provided in the obstructing justice statute." *Gordon*, 2019 IL App (5th) 160455, ¶ 24. In stark contrast to the circumstances in *Comage*, when an offender is charged with obstruction by furnishing a false name, there is no possibility of an additional felony charge for possessing contraband.

¶ 85       I also agree with the Fourth District's conclusion that there is an additional reason not to extend *Comage*'s material impediment requirement to the "furnishes false information" prong of the obstruction statute. As that court explained, "when, as here, the defendant furnishes false information, the potential that the investigation will be compromised is exceedingly high, which is why such a crime may be completed in a very short period of time—indeed, it may be completed at the moment such false information is provided." *Davis*, 409 Ill. App. 3d at 462.

¶ 86       Unlike in *Comage*, when it was clear that the contraband thrown over the fence and out of police officers' sight for approximately 20 seconds did not materially impede the criminal investigation, knowingly providing false information to law enforcement will often be detrimental to the investigation. This is particularly true when, as the evidence demonstrated here, the offender knowingly provides a false name with the intent to avoid an arrest on an outstanding warrant.

¶ 87       The majority also relies on our decision in *People v. Baskerville*, 2012 IL 111056. *Supra* ¶¶ 37-41. I note, however, that *Baskerville* did not cite, let alone analyze, our decision in *Comage*. In fact, *Baskerville* was tasked with deciding whether a different offense, the Class A misdemeanor of knowingly obstructing or resisting the performance of a police officer (720 ILCS 5/31-1(a) (West 2006)), required proof of a physical act. *Baskerville*, 2012 IL 111056, ¶¶ 16-20. That is not

the question presented in this appeal. In other words, *Baskerville* is inapplicable because it considered a completely different statutory-construction issue.

¶ 88     I am concerned that the majority's holding may negatively impact criminal investigations by reducing, if not eliminating, the deterrence associated with a criminal penalty for providing false information during an investigation. Under the majority's construction of section 31-4(a) of the Criminal Code, there is no penalty or deterrence for intentionally obstructing a criminal investigation by knowingly supplying false information to the investigators *unless* it can also be proven that the falsehood "materially impedes" the administration of justice. Adding more uncertainty, the majority leaves unanswered what constitutes material impediment sufficient to support a conviction for obstruction by furnishing false information. This outcome cannot be what the legislature intended when it chose under section 31-4(a) to criminalize, quite simply, the knowing furnishing of false information with the requisite intent. See *People v. Clark*, 2019 IL 122891, ¶ 22 (noting that "[t]he legislature has the power to declare and define conduct constituting a crime and to determine the nature and extent of punishment for it").

¶ 89     Ultimately, I agree with the appellate court's analysis. I would affirm its judgment that affirmed defendant's conviction for obstruction of justice based on his knowing provision of a false name to a police officer with the intent to avoid his arrest on outstanding warrants. For these reasons, I respectfully dissent.


¶ 90     JUSTICE KARMEIER, dissenting:

¶ 91     In 2011, in *People v. Comage*, 421 Ill. 2d 139 (2011), a majority of this court said that material impediment is an essential element of obstruction of justice, the offense described in section 31-4(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/31-4(a)(1) West 2014)). I adhere to the dissenting position in *Comage*. The plain and unambiguous language of section 31-4 does not support the judicial grafting of an additional element—material impediment—onto that statute. Once this defendant, with the intent to prevent his apprehension or obstruct his prosecution, furnished a false name to the investigating officers, the offense was completed. However, if it is as the majority would have it and material impediment *is* an essential element of this offense, then the State failed to prove that element,

- 24 -

and double jeopardy prevents defendant's retrial. On those bases, I respectfully dissent.

¶ 92    Section 31-4(a)(1) of the Criminal Code provides in pertinent part:

"A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly commits any of the following acts:

(1) Destroys, alters, conceals or disguises physical evidence, plants false evidence, [or] furnishes false information[.]" *Id.*[1]

¶ 93    In this case, the majority relies on *Comage*, as holding that "material impediment" is an element of the offense defined in section 31-4(a)(1). However, the holding in *Comage* was actually narrower, as the following excerpts suggest:

"[I]n defendant's view, because both the existence and location of the evidence were fully known to the officers the evidence was not concealed. *Comage*, 241 Ill. 2d at 144-45.

The *Comage* majority concluded:

"Because defendant did not 'conceal' the crack pipe and push rod within the meaning of the obstructing justice statute, the State failed to prove him guilty of that offense beyond a reasonable doubt." *Id.* at 151.

Once the majority in *Comage* found there was no concealment, which was an element the State had to prove, it need not have gone further to add the element of "material impediment" to the offense. That additional language is merely *dicta*, entirely unnecessary after the determination that there was no concealment. I would

---

[1]Unlike the general, misdemeanor offense defined in section 31-1 of the Criminal Code (720 ILCS 5/31-1 (West 2014)), the legislature chose to target, in section 31-4's felony provision, *specific acts* that, performed with the requisite "intent," complete the offense, irrespective of the fortuity of actual obstruction. Given the interpretation of the *Comage* majority, defendants who commit identical qualifying acts listed under section 31-4, with the requisite "intent," may experience vastly different outcomes—a felony conviction versus no criminal liability—based upon mere chance in an ensuing investigation.

limit the holding in *Comage* to be what it actually held: no concealment, no conviction.

¶ 94    In *People v. Baskerville*, 2012 IL 111056, this court construed a different statute with a different requisite mental state and an *actus reus* that requires *actual, effective* resistance or obstruction. Section 31-1(a) of the Criminal Code provides in pertinent part:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2014).

The resistance or obstruction required by section 31-1 *can* be equated to material impediment, *i.e.*, if there is no *effective* act of resistance or obstruction, there is no material impediment.

¶ 95    Again, in my view, section 31-4 does not require material impediment. In this case, the State charged defendant, pursuant to section 31-4, with obstructing justice "in that the defendant (Rasheed Casler) knowingly, *with the intent to prevent his arrest on warrants, provided false information* to Sgt. Guy Draper." (Emphasis added.) As charged, the requisite elements to be proven are (1) an intent to prevent apprehension or obstruct prosecution and (2) the furnishing of false information. The State adduced evidence establishing those two elements. That is sufficient to support defendant's 2015 felony conviction for obstruction of justice.

¶ 96    As the majority acknowledges, the State—which had the burden of proof— successfully resisted defense counsel's attempt to address material impediment, a judicially created element, arising out of the *Comage dicta*, which the majority now considers a requisite for conviction. As I see it, the State either adduced sufficient evidence to support defendant's conviction—and I believe it did, given my view of the statutory elements—or it did not. If proof of material impairment is required, as the majority would have it, the State did not prove its case, and defendant should be acquitted. The State already had the opportunity to prove the defendant violated section 31-4(a)(1). The majority's remand will give the State another, unwarranted opportunity to elicit evidence—though there does not seem to be any more—on an element it deemed irrelevant, on a topic to which it objected.

¶ 97     Although the trial court, pursuant to the State's objection, prohibited defense counsel from exploring lack of material impediment in his questioning of the officer, the trial court did nothing to inhibit *the State's* elicitation of evidence addressing material impediment. In fact, the majority states there is enough in that regard to support a conviction and put defendant through a second trial.[2] Yet, it is clear from the testimony *already* of record that no other evidence, one way or the other, is forthcoming. We have all the evidence there will be. It is simple and straightforward. What remains to be said?

¶ 98     The analytical sleight of hand the majority employs, to avoid a definitive evaluation of the evidence and to allow retrial of defendant a second time, is blatantly inconsistent.

¶ 99     It goes, sequentially, like this:

"Construed together, *Comage* and *Baskerville firmly establish* that a defendant's acts must be a material impediment and must be proved in a prosecution for obstructing justice."[3] (Emphasis added.) *Supra* ¶ 41.

¶ 100    As I have noted previously, this court's decision in *Comage* was rendered in 2011; *Baskerville* was decided in 2012. Defendant was tried and convicted in 2015—three years after those decisions "firmly established" the material impediment requirement. The majority's suggestion that the evidence presented at trial has been rendered insufficient only by a "posttrial change" in the law (*supra* ¶ 66) is disingenuous and baseless. In its double jeopardy analysis, the majority concludes:

---

[2]If the majority finds the evidence so convincing in that regard, it could simply find the element established, whether or not that element was submitted for the jury's consideration. See *People v. Thurow*, 203 Ill. 2d 352, 369 (2003); *People v. Rivera*, 227 Ill. 2d 1, 20-22 (2007).

[3]As noted, the misdemeanor statute at issue in *Baskerville* requires a lesser mental state than the felony provision here at issue—knowing that one's actions obstruct, as opposed to a specific intent to obstruct by the commission of certain specified acts that are apparently deemed particularly problematic by the legislature. If the suggestion is that the misdemeanor statute at issue in *Baskerville* should be construed to have the same elements as the felony provision in this case, there would, of course, be a proportionate penalties challenge at defendant's disposal. See generally *People v. Sharpe*, 216 Ill. 2d 481, 521-22 (2005).

> "Any insufficiency in proof was caused by the subsequent change in the law and not the State's failure to present sufficient evidence." *Supra* ¶ 66.

What change in the law? We were told that *Comage* and *Baskerville* firmly established the law.

¶ 101 The majority subsequently attempts to reinforce the contradictory notion that the law was somehow unsettled with this statement:

> "In the case at bar, we *unequivocally construe* section 31-4(a)(1) of the Criminal Code to include a material impediment requirement." (Emphasis added.) *Supra* ¶ 61.

"Firmly establish" in 2012? "Unequivocally construe" in 2020? The majority fails to acknowledge this contradiction. If there was something equivocal before the majority's disposition in this case, what was it? Is that a suggestion that some component of section 31-4(a)(1) warrants different treatment from another? Concealment of evidence (*Comage*) as opposed to the furnishing of false information (this case)?[4]

¶ 102 In any event, the State's evidence in this case—adduced on an element the State did not know it had to prove—is insufficient to prove material impediment. Sergeant Draper himself testified that nothing interfered with his ability to arrest defendant. He testified that he remembered defendant's name upon his emergence from the bathroom and that defendant did not attempt to run away or fight. Also, at the beginning of his investigation, Sergeant Draper called for backup, which arrived less than 10 minutes later. The entire investigation lasted 24 minutes. The State simply failed to prove beyond a reasonable doubt the existence of a material impediment. It should not be given another opportunity to do so.

¶ 103 It is axiomatic that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Patterson v. New York*, 432 U.S. 197, 210 (1977); accord *People v. Murray*, 2019 IL 123289, ¶ 28; *People v. Lucas*, 231

---

[4]The defendant in *Comage* did not successfully conceal evidence; the defendant in this case, without a doubt, furnished false information.

Ill. 2d 169, 178 (2008). "Such burden rests on the State throughout the entire trial and never shifts to the defendant. [Citation.] Therefore, the defendant is under no obligation to produce any evidence, and the burden of proof never shifts to the defendant but remains the responsibility of the State throughout the trial." *Murray*, 2019 IL 123289, ¶ 28.

¶ 104　　In this case, there was an entire failure of proof upon an element judicially grafted onto section 31-4(a)(1), *i.e.*, that defendant's furnishing of the false name materially impeded the administration of justice. The trial court, at the instance of the State, categorically excluded any evidence relating to the element of material impediment, and the evidence that was admitted at trial was insufficient to establish this element beyond a reasonable doubt. Therefore, applying the majority's elemental criteria, defendant's conviction is based on insufficient evidence. The result should be acquittal.

¶ 105　　In sum, in my view, the State proved defendant guilty of obstruction of justice based on proof of two elements: his intent to prevent his apprehension or obstruct his prosecution and the furnishing of false information to that end. If proof of material impediment is required, the State did not prove its case, and defendant should be acquitted. The State should not be given another opportunity to try defendant.