**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 170362-B

Order filed March 11, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0362 Circuit No. 15-CF-275 |
| ASHLEY J. OSTROWSKI, | ) ) ) | Honorable Jeffrey W. O'Connor, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice McDade and Justice Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:    The evidence was insufficient to prove defendant's guilt beyond a reasonable doubt.

¶ 2        The circuit court of Henry County found defendant, Ashley J. Ostrowski, guilty of obstructing justice. On appeal, defendant contends the evidence was insufficient to prove beyond a reasonable doubt that she committed the offense. A divided panel of this court initially found that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. *People v. Ostrowski*, 2020 IL App (3d) 170362-U, ¶¶ 15-18. Defendant filed a petition for leave to appeal

to the Illinois Supreme Court. Our supreme court denied defendant leave but entered a supervisory order directing us to vacate our judgment and consider the effect of the court's opinion in *People v. Casler*, 2020 IL 125117. *People v. Ostrowski*, No. 126207 (Ill. Jan. 27, 2021) (supervisory order). After reconsidering the matter, we conclude that the evidence was insufficient to prove defendant's guilt of obstructing justice beyond a reasonable doubt.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with obstructing justice (720 ILCS 5/31-4(a)(1) (West 2014)). The charge alleged that defendant knowingly furnished false information to a police officer with the intent to prevent the apprehension of Hector Fontanez. The cause proceeded to a bench trial.

¶ 5        Patrol Sergeant Nicholas Welgat testified that he was dispatched to the scene of a trespass complaint. The complainant was the ex-girlfriend of Fontanez. She called the police because Fontanez failed to leave the residence. When Welgat arrived Fontanez was no longer at the residence. The complainant informed Welgat that Fontanez had left in a black Ford Taurus belonging to defendant. Welgat relayed the information to Officer Eric Peed. Welgat instructed Peed to go to defendant's residence to locate the vehicle.

¶ 6        Welgat later joined Peed at defendant's trailer. Welgat sat in his vehicle while he watched Peed speak with defendant in front of the trailer. Peed relayed to Welgat that defendant had told him that Fontanez had left the trailer already. Peed began to leave, but Welgat "advised him to go back to the residence as [he] believed [Fontanez] was, in fact, hiding inside the trailer." According to Welgat, after he gave the instruction to Peed, "[b]asically, we pulled right back in, and as we pulled up and walked up to the residence, Mr. Fontanez then walked out of the door."

¶ 7        Peed testified that he received the dispatch to attempt to locate Fontanez as a suspect in a criminal trespass complaint. While driving on 6th Street in Kewanee, Peed saw Fontanez driving

a Ford Taurus in the opposite direction. Peed turned his vehicle around and attempted to locate the Taurus. Peed went to defendant's trailer, but the Taurus was not there. He remained in the area for several minutes, and eventually observed the Taurus in defendant's driveway. Peed knocked on the door of defendant's trailer. Defendant came out and met Peed on the porch. Peed told defendant that he wanted Fontanez to exit the trailer. Defendant told Peed that Fontanez had already left and that he was on his way to another friend's residence. When asked if he told defendant why he needed to speak with Fontanez, Peed said "I don't recall what I specifically told her."

¶ 8　　　　Next, Peed left defendant and advised Welgat that defendant told her that Fontanez was not in the trailer. Welgat told Peed to go back to defendant's trailer with him. When Peed and Welgat approached the trailer, defendant and Fontanez came outside and were both placed under arrest.

¶ 9　　　　Defendant was interviewed at the police station by Welgat. During the interview, defendant stated she was in the vehicle with Fontanez when he drove to his ex-girlfriend's house. She stayed in the vehicle while he went inside. When he returned, Fontanez indicated to defendant that he had an argument with his ex-girlfriend. Welgat then asked defendant when they realized the police were looking for Fontanez. Defendant answered they had seen an officer while driving before returning to her trailer. She agreed with Welgat that both she and Fontanez had just entered her trailer when Peed arrived. Defendant also agreed that Fontanez did not want to come out initially. When Welgat asked defendant about the events that transpired after Peed left, defendant responded, "I told [Fontanez] he had need to go talk to the police cause I kept asking him 'like what the hell did you do?' " When Welgat confronted defendant with lying to Peed, defendant

3

responded, "When you guys came back though, I went in, straight into the house and told [Fontanez] he needed to call the police."

¶ 10      Welgat also interviewed Fontanez. When Welgat asked why Fontanez did not exit the trailer when Peed initially approached, he said "I just, you know, I don't want to go to jail." When Welgat asked why Fontanez decided to come out when officers reapproached, Fontanez replied, "I don't know I was just scared, I guess."

¶ 11      Defendant and Fontanez testified for the defense. Defendant said that she and Fontanez were friends. Before Welgat and Peed arrived at her trailer, she and Fontanez drove to the home of Fontanez's former girlfriend. Defendant stayed in the vehicle while Fontanez entered his former girlfriend's home. When Fontanez returned, he indicated that he had gotten into a dispute with his former girlfriend. Defendant and Fontanez then returned to her trailer. When Peed arrived, defendant did not know where Fontanez was. Defendant told Peed that Fontanez went to Wally Garcia's house because "that's the only place [Fontanez] always went." Peed told defendant to tell Fontanez, if she saw him, that he needed to speak with him.

¶ 12      After Peed left, defendant went into her trailer, and Fontanez entered through the back door. Defendant told Fontanez that the police had been at the trailer. Defendant encouraged Fontanez to speak with the police, and when Peed and Welgat returned, Fontanez went outside to speak with them.

¶ 13      Fontanez testified that after he and defendant returned from his former girlfriend's house, he briefly went in and out of defendant's trailer. Fontanez then went to Garcia's house. Fontanez did not remember being at the trailer when Peed initially spoke with defendant.

¶ 14      The circuit court found defendant guilty of obstructing justice and sentenced her to 30 months' conditional discharge and 180 days in the county jail. Defendant appeals.

4

¶ 15                                    II. ANALYSIS

¶ 16          Defendant argues that the evidence was insufficient to prove her guilt beyond a reasonable doubt of obstructing justice. Specifically, the State failed to prove that she knew that Fontanez was being investigated for a crime or that her false statement impeded the investigation. We find the evidence insufficient to establish that defendant's false statement materially impeded the investigation.

¶ 17          In a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Id.* Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 18          As charged in this case, a person obstructs justice when he or she knowingly furnishes false information "with the intent to prevent the apprehension or obstruct the prosecution or defense of any person." 720 ILCS 5/31-4(a)(1) (West 2014).

¶ 19          In *Casler*, 2020 IL 125117, ¶ 3, the State charged the defendant with, among other things, obstructing justice. The charge alleged that the defendant "knowingly, with the intent to prevent his arrest on warrants, provided false information to [the police] in that he said his name was Jakuta King Williams." *Id.* The trial evidence established that two police officers saw the defendant

5

emerge from a hotel room, and then reenter the room and shut the door. The officers smelled the odor of burnt cannabis, knocked on the door, and another individual opened the door. The defendant was not in the living area of the hotel room, and one of the officers knocked on the closed bathroom door. An individual in the bathroom indicated that his name was "Jakuta King Williams." *Id.* ¶ 7. Dispatch was unable to locate an individual by that name. When the individual emerged from the bathroom, the officer recognized him as the defendant and remembered his name from a prior arrest. The officer asked the defendant if his name was Rasheed Casler. The defendant did not respond. The officer radioed the name Rasheed Casler to dispatch, and the dispatcher reported that that individual had an outstanding warrant. The officer placed the defendant under arrest. Subsequently, an officer found an Illinois identification card near the defendant's location with the name of Rasheed Casler on it.

¶ 20        The defendant testified that he was intoxicated when he opened the hotel room door, and he was trying to locate the bathroom. The defendant did not notice the officers in the hallway and found his way to the bathroom. When the officer knocked on the bathroom door, the defendant thought it was one his friends joking with him, so he said his name was "Jakuta King Williams." *Id.* ¶ 14. The defendant did not know the officers were outside the bathroom door, and he was not attempting to avoid being arrested by providing a false name. Defendant realized the officers were in the room when he was told to open the door.

¶ 21        A jury found the defendant guilty of obstructing justice. The appellate court affirmed the judgment of conviction finding that the defendant knowingly and with the intent to prevent his arrest on warrants, provided false information to the police. *People v. Casler*, 2019 IL App (5th) 160035, ¶¶ 23-25. The appellate court held the circumstantial evidence was sufficient to prove that the defendant intended to avoid apprehension and gave the officer a false name in an effort to do

6

so. *Id.* ¶¶ 28-33. The court also held the State was not required to prove that the false name provided by the defendant materially impeded his arrest. *Id.* ¶ 49.

¶ 22        In the supreme court, the defendant argued his obstructing justice conviction required the State to prove beyond a reasonable doubt that the false information that he provided to the police materially impeded the administration of justice, and that the State did not prove that his conduct materially interfered with a police investigation. *Casler*, 2020 IL 125117, ¶ 20. After reviewing section 31-4(a) of the Criminal Code of 2012, the supreme court held, "in a prosecution for obstructing justice by furnishing false information, the State must prove that the false information materially impeded the administration of justice," and it reversed defendant's conviction. *Id.* ¶ 53.

¶ 23        Here, the information alleged defendant committed the offense of obstructing justice in that she, with the intent to prevent the apprehension of Fontanez, knowingly furnished false information to the officers. First, defendant argues that she did not have the required intent because the officers did not inform her that they were investigating Fontanez. Second, defendant contends that even if this court finds that she did intend to prevent the apprehension of Fontanez, her lie as to Fontanez's whereabouts did not materially impede the investigation.

¶ 24        For the sake of argument, we assume that a rational trier of fact could conclude that the State presented evidence that defendant knew the police were investigating Fontanez. However, we find that the State failed to prove that defendant's false statement materially impeded the officers' investigation. Peed observed Fontanez driving the black Ford Taurus and ultimately found the vehicle parked outside defendant's trailer. Then, Peed looked for Fontanez in defendant's trailer. Defendant's initial statement that she did not know where Fontanez was, but that he was likely at Garcia's house, caused Peed to momentarily leave defendant's trailer. Upon returning, Peed and Welgat observed Fontanez outside the trailer. From this evidence, we conclude

7

that defendant's false statement did not materially impede the officers' investigation. See *id.* ¶ 40; see also *People v. Taylor*, 2012 IL App (2d) 110222, ¶ 19 (holding that a false statement did not materially impede the administration of justice).

¶ 25    In reaching this conclusion, we reject the State's argument that *People v. Davis*, 409 Ill. App. 3d 457 (2011) directs the outcome of this case. The State relies on *Davis* to argue that defendant completed the crime of obstructing justice when she lied to the officers. See *id.* at 462. However, in *Casler*, 2020 IL 125117, ¶ 53, the supreme court overruled *Davis*. Therefore, we conclude that the evidence was insufficient to prove that defendant materially impeded the officers' investigation and reverse her conviction for obstructing identification.

¶ 26                          III. CONCLUSION

¶ 27    The judgment of the circuit court of Henry County is reversed.

¶ 28    Reversed.