**2023 IL 127828**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127828)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
SHAQUILLE P. PRINCE, Appellant.

*Opinion filed May 18, 2023.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1   A jury convicted defendant, Shaquille P. Prince, of the offense of obstruction of justice by furnishing false information (720 ILCS 5/31-4(a)(1) (West 2018)), in that he gave the police a fake name and an incorrect birth date at the police station following his arrest. On appeal, the appellate court reversed, finding the evidence insufficient to convict as a matter of law, where the State failed to establish the

"material impediment" element of the offense. Relying on this court's decision in *People v. Casler*, 2020 IL 125117, the appellate court remanded the matter for a new trial, finding double jeopardy did not bar retrial. We allowed defendant's petition for leave to appeal. As outlined below, we affirm in part and reverse in part the judgment of the appellate court and reverse the judgment of the circuit court.

¶ 2                                        BACKGROUND

¶ 3        We recite only those facts necessary to resolve the issue before us. Romeoville police officers arrested defendant on January 25, 2018. On February 7, 2018, a Will County grand jury returned a bill of indictment alleging defendant committed the Class 4 felony offense of obstruction of justice, by furnishing false information, in that he gave police a fake name and an incorrect birth date with intent to avoid arrest on a then-active warrant. Notably, the underlying Du Page County warrant "had been issued in error and was later vacated." 2021 IL App (3d) 190440, ¶ 40.

¶ 4        During defendant's jury trial in April 2019, the State presented the following evidence. Romeoville police officers responded to a call that a residential security alarm had been activated. When officers arrived at the residence shortly after 1 a.m., the alarm was no longer sounding. At the rear of the house, they found an unlocked door. When the officers opened the door, the alarm began to sound again. Then, defendant came to the door wearing a tank top and sweatpants. When questioned regarding the whereabouts of the home's occupant, defendant stated "Jessica" lived there but was out of town and refused to give the officers his name or identification or to assist officers in contacting Jessica. After officers entered the home to investigate, defendant attempted to push past the officers and go to the bedroom. Ultimately, defendant was arrested and taken to the Romeoville police station.

¶ 5        An officer who remained at the residence after defendant was transported to the Romeoville police station spoke to Amanda Reeves, a friend of Jessica's, who gave the officer defendant's social media username. From this, the officer determined defendant's name and learned there was an active Du Page County warrant out for his arrest.

¶ 6        At the police station, defendant initially refused to be fingerprinted or to take a booking photo. While at the station, defendant stated his name was "Sean Williams" and gave the police an incorrect birth date. Officers ran that information through the LEADS database and found no match. After speaking to a police supervisor, defendant agreed to allow the police to fingerprint and photograph him. One officer estimated that the time between defendant arriving at the station and agreeing to a booking photo and fingerprinting was "more than minutes," but he did not want to guess the "exact time" this took.

¶ 7        Defendant testified that he had permission to stay in the house and had set off the alarm by accident. According to defendant, the police were combative and needlessly escalated the situation into a physical confrontation. Defendant denied giving the police a false name and birth date. During the jury trial, the parties did not raise, and the court did not address or enter any ruling on, "material impediment" as an element of the offense. A jury convicted defendant of obstructing justice. At sentencing, the court sentenced defendant to 24 months' conditional discharge and 360 days of jail time, with credit for 180 days already served. Defendant appealed.

¶ 8        On appeal, the State conceded that the evidence presented was insufficient as a matter of law where the State offered no evidence on the "material impediment" element. *Id.* ¶ 34 (citing *Casler*, 2020 125117, ¶ 69). The appellate court accepted the State's concession and found the evidence insufficient as a matter of law where the State failed to prove the "material impediment" element of obstruction of justice. *Id.* ¶ 41. Relying on *Casler*, the appellate court remanded the matter for a new trial, finding double jeopardy did not bar retrial. *Id.* (citing *Casler*, 2020 125117, ¶¶ 66-67).

¶ 9        We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 10                                                    ANALYSIS

¶ 11       In this matter, we are asked to decide whether constitutional double-jeopardy principles bar remand for a new trial. An issue involving the constitutional protection against double jeopardy "presents a question of law subject to *de novo*

review." *People v. Gaines*, 2020 IL 125165, ¶ 24. The double jeopardy clause of the fifth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, and the double jeopardy clause of the Illinois Constitution both provide that no person shall "be twice put in jeopardy" for the same offense. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 10. The fifth amendment's "prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit," to prevent the government from "subject[ing] the individual to repeated prosecutions for the same offense," given "the heavy personal strain" that a criminal trial places on a defendant. *United States v. Jorn*, 400 U.S. 470, 479 (1971).

¶ 12     The United States Supreme Court has explained that, as with an acquittal or directed verdict for the defendant at trial, the prohibition against double jeopardy similarly "precludes a second trial once the reviewing court has found the evidence legally insufficient." *Burks v. United States*, 437 U.S. 1, 18 (1978). On the other hand, an appellate reversal in which a "conviction [is] set aside for error in the proceedings below" can result in a remand for a new trial. *Lockhart v. Nelson*, 488 U.S. 33, 39-40 (1988).

¶ 13     In *People v. Comage*, 241 Ill. 2d 139, 150 (2011), this court held that the State needed to show the defendant "materially impede[d] the police officers' investigation" to prove him guilty of obstructing justice by "concealing" evidence and, where no such showing was made, the evidence was legally insufficient to convict. This court then reversed the defendant's conviction without remanding for a new trial. *Id.* at 151.

¶ 14     Similarly, in *People v. Baskerville*, 2012 IL 111056, ¶¶ 29, 35-38, this court held that obstructing a police officer by providing false information requires that the giving of "false information actually impeded an act the officer was authorized to perform." We affirmed the appellate court's reversal for insufficient evidence to support a conviction. *Id.* ¶ 38. As in *Comage*, we did not remand for a new trial. *Id.*

¶ 15     Prior to the trial in this case, the appellate court in *People v. Taylor*, 2012 IL App (2d) 110222, ¶ 17, analyzed *Comage* and *Baskerville* and held a material impediment must be proven to support a conviction of obstructing justice by furnishing false information—the same offense at issue here. The *Taylor* court similarly reversed outright where the evidence was legally insufficient to convict

and distinguished *People v. Davis*, 409 Ill. App. 3d 457, 458 (2011), *overruled by Casler*, 2020 IL 125117, ¶ 53, an earlier appellate court case decided prior to the guidance of *Baskerville*. *Taylor*, 2012 IL App (2d) 110222, ¶¶ 14, 17-19; see *Casler*, 2020 IL 125117, ¶ 43 (noting that *Taylor* "correctly applied these principles as expressed in *Comage* and *Baskerville*").

¶ 16     After trial in this case, we held in *Casler* that the decisions in *Comage* and *Baskerville*, when "[c]onstrued together," already "firmly establish that a defendant's acts must be a material impediment and must be proved in a prosecution for obstructing justice." *Casler*, 2020 IL 125117, ¶ 41. The trial court in *Casler* barred the parties from arguing or introducing any evidence regarding whether defendant's conduct there was a material impediment—preventing introduction of the very evidence this court found lacking. *Id.* ¶ 62.

¶ 17     Even so, we concluded that double-jeopardy principles allowed for retrial in those circumstances and remanded the case, noting "the error that manifested at defendant's trial is, despite the nomenclature employed by the parties, more akin to trial error than to the sufficiency of the evidence." *Id.* ¶ 66. Despite concluding that the need to prove a material impediment for obstructing justice was "firmly established" by prior opinions in 2011 and 2012 (*id.* ¶ 41), this court also opined that, to some extent, a "change in the law" had occurred in *Casler* (*id.* ¶¶ 65-66).

¶ 18     In this case, defendant argues that *Burks* should drive our remedy analysis rather than *Casler*, because here, unlike in *Casler*, there was no trial error that barred the introduction of sufficient evidence to sustain a conviction.

¶ 19     Defendant also notes that, well before the time of trial here, *Comage* and *Baskerville* together had "firmly established" the need to prove that additional element, as this court would later recognize in *Casler* and the appellate court had already concluded in *Taylor*. Defendant argues that, taken together with the doctrine of legislative acquiescence and the rule of lenity, the State should have known it was required to prove a material impediment and, in any event, double jeopardy should now apply to bar remand for another trial.

¶ 20     The State initially asserts that *Casler* is "materially indistinguishable from this case," pointing to the remedy portion of *Casler*, in which this court discussed cases analyzing a change-in-law exception and equated the error at issue there as being

like a trial error. The State then argues that a change-in-law exception should apply here too, citing *Casler* and a variety of federal cases. Defendant responds that this court need not reach the issue of a change-in-law exception to decide this case but, to the extent we do consider it, any such exception should be carefully limited.

¶ 21　　In the alternative, the parties also dispute whether it would even be possible for the State to prove a material impediment on remand. Defendant asserts the facts of this case are straightforward and clearly foreclose that possibility, where defendant was already in custody at the police station by the time he gave a fake name and an incorrect birth date. In the meantime, officers both (1) inferred defendant's real name around the same time by looking at his social media account and (2) gained his consent to be fingerprinted a short time later. The State argues it should be given the opportunity to try to present new evidence on remand.

¶ 22　　Defendant additionally argues in the alternative that this court should reverse outright where he has already completed his sentence and "a new trial therefore would be neither equitable nor productive." *People v. Campbell*, 224 Ill. 2d 80, 87 (2006). Defendant also highlights the fact that the underlying warrant was issued in error and later rescinded, while emphasizing that any further proceedings would be a waste of judicial resources. The State asserts that this court should remand and defer to prosecutorial discretion on the question of whether to retry defendant.

¶ 23　　To begin, we reject the State's assertion that this case is "indistinguishable" from *Casler*. Critical to our decision to remand for a new trial in *Casler* was the fact that the trial court barred the parties from introducing evidence on the key issue of whether defendant's actions constituted a material impediment. *Casler*, 2020 IL 125117, ¶ 62 (emphasizing that "the record in this case plainly shows that the trial court categorically excluded any evidence relating to the essential element of a material impediment"). As we noted, such an error should be considered as "more akin to trial error than to the sufficiency of the evidence." *Id.* ¶ 66.

¶ 24　　Here, by contrast, no such restriction occurred at trial. The State—which has the burden of proof—had the opportunity to introduce evidence proving each element of the charged offense beyond a reasonable doubt. Despite this, the State made no attempt to introduce any evidence of a material impediment, thus failing to provide legally sufficient evidence to support a conviction.

¶ 25    As we have noted, the State's reliance on *Davis*, 409 Ill. App. 3d at 458—which was decided prior to *Baskerville* and correctly distinguished in *Taylor* on that basis, before being overruled in *Casler*—is misplaced. The State also cites two cases from this court, *People v. Ellis*, 199 Ill. 2d 28, 46-47 (2002), and *In re Q.P.*, 2015 IL 118569, ¶¶ 23-27, but neither case addresses whether evidence of a material impediment is required in a prosecution for obstructing justice.

¶ 26    The State next urges us to consider federal change-in-law cases. But in each of the federal cases cited by the State—including some cited in *Casler*, 2020 IL 125117, ¶¶ 65-66 (collecting cases)—the parties were required at trial to follow a then-binding trial or appellate court ruling or law that was later overturned, similar in effect to what occurred in *Casler*. See *United States v. Wacker*, 72 F.3d 1453, 1465 (10th Cir. 1995) (permitting retrial on one count where the then-applicable rule on "use" of a firearm was abrogated by the Supreme Court); *United States v. Weems*, 49 F.3d 528, 531 (9th Cir. 1995) (permitting retrial where the Supreme Court abrogated the Ninth Circuit's *mens rea* requirement for relevant financial offenses after trial); *United States v. Houston*, 792 F.3d 663, 665 (6th Cir. 2015) (permitting retrial where the Supreme Court abrogated the Sixth Circuit's standard defining a "true threat" after trial); *United States v. Ford*, 703 F.3d 708, 711-12 (4th Cir. 2013) (permitting retrial where the erroneous definition at issue was "binding on the district court" at trial); *United States v. Gonzalez*, 93 F.3d 311, 318 (7th Cir. 1996) (permitting retrial where the Supreme Court abrogated the Seventh Circuit's definition of "use" for a drug offense after trial); *United States v. Harrington*, 997 F.3d 812, 817 (8th Cir. 2021) (permitting retrial where the Supreme Court abrogated the Eighth Circuit's standard for relevant drug offenses after trial); *United States v. Robison*, 505 F.3d 1208, 1225 (11th Cir. 2007) (remand allowed where an erroneous ruling defining "navigable waters" controlled at trial).

¶ 27    We decline to apply such logic in this case, which lacks any similar trial restriction. There was no trial error, or anything akin to one, that prevented the State—which bore the burden of proof—from introducing evidence in this case on the issue of whether a material impediment occurred. See *Lockhart*, 488 U.S. at 39-40; *Casler*, 2020 IL 125117, ¶ 66. Nor was there an appellate court ruling or law in effect at the time of trial, later overruled, that similarly limited the State's approach at trial. See, *e.g.*, *Wacker*, 72 F.3d at 1465; *Weems*, 49 F.3d at 531. Instead, the evidence presented by the State was legally insufficient to convict. See *Taylor*,

2012 IL App (2d) 110222, ¶¶ 14, 17-19. On this basis, we conclude the double jeopardy clause bars any retrial. We therefore reverse defendant's conviction and vacate his sentence.

¶ 28    In an effort to provide clear guidance for future cases, we acknowledge that this holding could be read to conflict with the following discussion in *Casler*:

> "We determine that the evidence was sufficient under the instruction that was given, rather than the instruction that would otherwise be given on remand. [Citations.] Here, the State had no reason to introduce evidence regarding a material impediment requirement because, at the time of trial, this court had not yet held that the government was required to prove that element with regard to the furnishing of false information. [Citations.]

> More fundamentally, the error that manifested at defendant's trial is, despite the nomenclature employed by the parties, more akin to trial error than to the sufficiency of the evidence. [Citation.] Any insufficiency in proof was caused by the subsequent change in the law and not the State's failure to present sufficient evidence. [Citation.] Courts considering this issue agree that where a reviewing court determines that the evidence presented at trial has been rendered insufficient only by a posttrial change in the law, double jeopardy concerns do not preclude the government from retrying the defendant. [Citations.]" *Casler*, 2020 IL 125117, ¶¶ 65-66.

¶ 29    To the extent that our holding in this matter seems at odds with the previously mentioned discussion in *Casler*, we caution that the remedy portion of *Casler* should be read narrowly to apply to its facts. For purposes of double-jeopardy analysis, we conclude that a "change in law" only occurred there in the sense that this court reversed the trial court's erroneous ruling barring the introduction of key evidence.

¶ 30    Given our conclusion that retrial is prohibited in this matter, we decline to address the remaining arguments pertaining to a potential remand.

¶ 31    CONCLUSION

¶ 32    For the foregoing reasons, we affirm in part and reverse in part the judgment of the appellate court and reverse the judgment of the circuit court. We reverse defendant's conviction and vacate his sentence.

¶ 33    Appellate court judgment affirmed in part and reversed in part.

¶ 34    Circuit court judgment reversed.