2025 IL App (1st) 231054-U

SIXTH DIVISION
March 14, 2025

No. 1-23-1054

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20 CR 12112 |
| | ) | |
| RAMZALLEN HANKERSON, | ) | Honorable |
| | ) | Steven G. Watkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Tailor and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We reverse and remand for a new trial because a posttrial change in law rendered the evidence insufficient on whether the defendant knew the serial number on the firearm was defaced.

¶ 2    Following a jury trial, defendant Ramzallen Hankerson was found guilty of possession of a defaced firearm and aggravated assault and sentenced to two years' probation on each charge, to be served concurrently. The jury also acquitted Hankerson on another possession of a defaced firearm charge. He appeals arguing that the State failed to prove the necessary elements of possession of a defaced firearm, along with claims of evidentiary error, ineffective assistance of counsel, and that the circuit court erred by refusing to provide substantive answers to the jury's questions. For the reasons below, we reverse Hankerson's convictions and remand for a new trial.

¶ 3                                    BACKGROUND

¶ 4    Hankerson was arrested on October 22, 2020, and charged via indictment with aggravated assault (720 ILCS 5/12-2(c)(1) (West Supp 2019)) against the victim Cedric Smith, and two counts of possession of a defaced firearm (720 ILCS 5/24-5(b) (West 2018)), one for possessing a rifle and another for possessing a .22 caliber pistol. Hankerson's counsel did not move to suppress the firearms before trial, but did move *in limine* to bar the State from playing audio from any police officer's body-worn camera, on the basis of hearsay. The circuit court reserved ruling on the motion, and trial began on March 7, 2023.

¶ 5    At trial, Shavon Enoch, Smith's friend, testified she was with Smith at his house on October 22, 2020, in Smith's room on the top floor. Hankerson also lived in the home. While there, she saw Smith and Hankerson argue over taco seasoning. Following the argument, she heard Hankerson ascend the staircase towards Smith's room, but she could not see Hankerson at this point, and did not remember what he said to Smith. Enoch did not see Hankerson holding anything.

¶ 6    Enoch acknowledged that at some point that day, she interacted with police officers. The State then played video, with audio, from the body-worn camera of the Chicago police officers who responded to Smith's home on October 22, 2020. On the video (People's Exhibit 1, included

in the record on appeal), Enoch tells the officers that Hankerson ascended the staircase towards Smith while holding a rifle and saying, "You ain't ready for this." An officer asks her if she saw Hankerson holding the firearm, and Enoch confirms that she did. After the State played the video, Enoch acknowledged that her testimony at trial differed from what she told the responding officers because, on the scene, she "was just going off what [Smith] had told" her. On cross-examination, Enoch stated she never saw Hankerson holding a firearm.

¶ 7    Smith testified that he was currently incarcerated for possession of a firearm conviction. The house at issue is located on the 800 block of West 50th Street in Chicago. Hankerson and Smith's sister, Kalisa Smith, also lived in the house at the time of the incident. Smith lived in the upstairs apartment while Hankerson occupied the "middle" bedroom on the first floor. Mr. Smith testified that the house has "[t]hree bedrooms on the first floor and the whole upstairs [is] like an apartment."

¶ 8    Regarding October 22, 2020, Smith acknowledged that he and Enoch were together in the house that day but responded to any questions about the incident itself with "I don't recall."[1] The circuit court then permitted the State to again play the responding Chicago police officers' body-worn camera video, with audio (People's Exhibits 2 through 5), in response to Smith's repeated "I don't recall" answers.

¶ 9    In People's Exhibit 2, an officer asks Smith who owns the house, and Smith states that his mother owned it, but she recently passed away, and he was the "beneficiary." The officers ask if

---

[1] Before Smith's testimony, an attorney discussed the self-incrimination potential of his testimony with Smith. The attorney then represented to the circuit court that there was a valid concern that Smith might incriminate himself if he testified substantively about the incident such that Smith could validly invoke his right to remain silent under the fifth amendment to the United States Constitution. The court decided to handle the issue question by question. During his testimony, Smith did not invoke his right to remain silent in response to questions about the incident.

they can enter to retrieve the rifle, and Smith responds affirmatively. Exhibit 3 depicts Smith affirming to the officers that Kalisa is inside. As the officers and Smith enter the house, he says to Kalisa "you know he pointed a rifle at me." In Exhibit 4, Kalisa responds with "yeah" to Smith's question. Smith then points the officers to a back room, saying, "His room is back there." The officers enter the room by opening a closed, but unlocked, door.

¶ 10     Finally, In Exhibit 5, an officer asks Smith "what exactly happened." Smith responds that Hankerson had been "tripping all week." That day, an argument started because Hankerson was angry about "some taco seasoning." Smith says Hankerson was also "mad" that Smith's mother put the house in Smith's name when she died, because Smith was "about to put [Hankerson] out" of the house. During the argument, Hankerson said to Smith "do you think I'm playing with [you]?," then left the room and returned holding a black rifle, saying I will "fire you're a** up." He did not point the rifle at Smith, but Smith believed Hankerson would have fired at him if they continued the argument. Enoch was present when the incident happened.

¶ 11     On cross-examination, Smith testified that Hankerson already lived in the house at the time Smith moved in. Smith and Enoch had been drinking alcohol before the incident on October 22, 2020, and Smith was "drunk."

¶ 12     Chicago police officer Joshua White testified that on October 22, 2020, he and his partner Officer Jaycox responded to Smith's house due to a 911 call, where the officers encountered Smith and Enoch. White testified that Smith admitted he "was in fear of being shot by" Hankerson. Smith consented to the search of the house and Hankerson's room. Officers recovered two firearms, a rifle and a .22 pistol, from Hankerson's room. The serial numbers on each firearm were illegible and appeared to be "scratched off." During White's testimony, the State played body-worn camera footage from People's Exhibit 8, which depicted the officers pursuing and arresting Hankerson,

and also played additional footage of the officer's search of the first-floor bedroom. On cross-examination, White admitted that he found no mail, prescription bottle, or other object suggesting the first-floor bedroom was Hankerson's. White did not recall if fingerprint or DNA testing was ordered on the firearms.

¶ 13    Chicago police officer Rhianna Tejeda Checo, a forensic firearm examiner, testified that she examined the firearms involved in the case, including their serial numbers. She believed that someone obscured the serial numbers on each firearm by using a tool to mark their surfaces. Checo partially restored the serial numbers using a chemical process.

¶ 14    The parties stipulated that the keeper of records for the Illinois State Police would testify that Hankerson did not have a firearm owner's identification card or concealed carry license, and that Chicago police officer Joseph Cerio would testify as to the chain of custody of the firearms and that the rifle and pistol were functional.

¶ 15    The State moved its exhibits into evidence, including the videos and the two firearms, and rested. The circuit court denied Hankerson's motion for a directed verdict, and he decided to not testify or present any evidence. Following closing arguments, the circuit court instructed the jury in relevant part: "To sustain the charge of defacing identification marks of firearms, rifle, the State must prove the following propositions: First: That the defendant knowingly possessed a firearm to wit, rifle. And, Second: That the importer or manufacturer's serial number on that firearm has been changed, altered, removed, or obliterated."

¶ 16    During deliberations, the jury submitted five questions to the circuit court:

(1) "[W]hat was [Hankerson] doing if he wasn't arguing?";

(2) "Why was the sister not brought in?":

(3) "Timeline of when guns were obtained. See videos again.";

(4) "Was the gun loaded?"; and

(5) "Was the gun found before or after [Hankerson] was arrested."

¶ 17    The circuit court did not substantively respond to any question, instead replying, "please continue to deliberate. All the evidence has been presented to you. The videos will be made available shortly." The court then provided the admitted videos to the jury.

¶ 18    On March 9, 2023, the jury found Hankerson not guilty of possession of a defaced firearm regarding the pistol, but guilty of aggravated assault and possession of a defaced firearm regarding the rifle.

¶ 19    Hankerson moved for a new trial, arguing in relevant part that the evidence was insufficient, the circuit court erred by admitting the body-worn camera audio, and the court improperly overruled Hankerson's objection to the State's question about his statement to Kalisa as depicted on Exhibits 3 and 4. On April 20, 2023, the circuit court denied the motion for a new trial, and the matter moved to sentencing where, after a hearing, the court sentenced Hankerson to two years' probation on each count, to be served concurrently. The court later denied Hankerson's motion to reconsider sentence, and this appeal followed.

¶ 20                          JURISDICTION

¶ 21    The circuit court denied Hankerson's motion to reconsider sentence on June 1, 2023, and he filed his notice of appeal that same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Apr. 15, 2024).

¶ 22                          ANALYSIS

¶ 23    On appeal, Hankerson first claims the State failed to offer sufficient evidence regarding possession of a defaced firearm because it did not prove he knew the rifle's serial number was

defaced. In reviewing the sufficiency of the evidence, this court will not retry the defendant, and instead asks "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Jones*, 2023 IL 127810, ¶ 28.

¶ 24    It is undisputed that while the trial was pending, the current interpretation of the charge in the appellate court was that it was unnecessary for the State to prove that a defendant knew that the firearm was defaced; it sufficed for the State to prove, as the circuit court instructed the jury here, that the firearm's serial number was defaced at the time a defendant possessed it. See *People v. Ramirez*, 2023 IL 128123, ¶¶ 17-19 (discussing *People v. Stanley*, 397 Ill. App. 3d 593, 603 (2009)). The Illinois Supreme Court changed this requirement in *Ramirez*, clarifying that the knowledge component of the charge required both knowing possession of the firearm and that the defendant knew of the defacement. *Id.* ¶ 23. The supreme court issued its opinion in *Ramirez* on May 18, 2023, after the jury's March 9, 2023, verdict in this matter.

¶ 25    The parties agree that the State did not prove Hankerson knew of the rifle's defacement, and thus the evidence was insufficient, but dispute the implications of this failure. The State contends that the conviction should be reversed, and the matter remanded for a new trial, as occurred in *Ramirez*. In so arguing, the State maintains this would not violate Hankerson's double jeopardy rights, citing *People v. Casler*, 2020 IL 125117, ¶ 57, for the proposition that retrial is permitted "when a conviction is reversed because of a posttrial change in law." The State emphasizes that the *Ramirez* court permitted a second trial on remand where the evidence was insufficient on the defendant's knowledge of defacement, recognizing the circuit court had "specifically recognized" the *Stanley* line of cases in making its ruling. *Ramirez*, 2023 IL 128123, ¶ 30.

7

¶ 26   Hankerson responds that his possession of a defaced firearm charge should be reversed outright, with no retrial, because the evidence was insufficient to show his knowledge of defacement, and the record does not demonstrate the jury relied on the *Stanley* precedent. He also contends that nothing prevented the State from introducing evidence of his knowledge of defacement, citing *People v. Prince*, 2023 IL 127828, ¶¶ 11-29 (double jeopardy barred retrial where the State failed to offer evidence on an established element of the charge, and no appellate court precedent limited the State's approach at trial).

¶ 27   We find that a retrial for possession of a defaced firearm regarding the rifle is appropriate on remand because this situation is functionally indistinguishable from *Ramirez*. While the jury did not, and indeed could not, state on the record that it relied on the *Stanley* understanding of the charge, similar reliance did occur here because the jury instructions supplied the law based on the *Stanley* understanding. *Ramirez*, 2023 IL 128123, ¶ 30. The instruction relayed only two elements—knowing possession and defacement—and did not include the requirement that the State prove Hankerson knew of the defacement. This is the law we must presume the jury applied. See *People v. Birge*, 2021 IL 125644, ¶ 40. It follows that, as in *Casler*, the "insufficiency in proof was caused by the subsequent change in the law and not the State's failure to present sufficient evidence," making remand appropriate. *Casler*, 2020 IL 125117, ¶ 66.

¶ 28   The *Prince* principle Hankerson cites does not apply in this context because our supreme court addressed *this exact* change in the law in *Ramirez*. Here, as in *Ramirez*, while the State's approach to trial was not restricted by an evidentiary order, it was "limited" by "an appellate court ruling or law in effect at the time of trial, later overruled," which the *Prince* court explicitly recognized as grounds for retrial in change of law circumstances. *Ramirez*, 2023 IL 128123, ¶¶ 28-31; *Prince*, 2023 IL 127828, ¶ 27. We acknowledge the State did not proffer what evidence it

would introduce to demonstrate Hankerson's knowledge of defacement, as it did in *Ramirez*, but given the near identical scenarios between *Ramirez* and this case, retrial is appropriate.

¶ 29 As to Hankerson's argument that the circuit court erred by allowing testimony about Smith's alleged fear of receiving a battery and admitting Kalisa's statements in the body camera videos because of hearsay and confrontation clause issues, the State asserts that "[t]his court should decline to address the specific issues of whether hearsay was admitted, or impeachment was perfected" at Hankerson's trial. Further, the State agrees that the statement of Smith's fear, "would only be admissible at a retrial as a prior inconsistent statement to attack Smith's credibility under Illinois Rule of Evidence 613(b)." While acknowledging our authority to address these arguments, the State brings to the attention of this court that we "should refrain from deciding an issue when resolution of the issue will have no effect on the disposition of the appeal." *People v. Stitts*, 2020 IL App (1st) 171723, ¶ 33.

¶ 30 We accept the State's concession that the lack of evidence on Hankerson's knowledge of defacement so affected the underlying proceeding that it tainted both convictions, and, accordingly, we also reverse the aggravated assault conviction. We further find that the State may pursue retrial on this count as there are no double jeopardy concerns regarding the sufficiency of the evidence. See *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). A reasonable factfinder could have found Hankerson placed Smith in reasonable apprehension of a battery where Hankerson, while allegedly wielding a rifle, confronted Smith aggressively, and Smith feared Hankerson might shoot him.

¶ 31 We now address Hankerson's three other claimed errors on appeal: (1) the circuit court's refusal to answer the jury's questions substantively; (2) ineffective assistance of trial counsel for not filing a motion to suppress the firearms; and (3) the court's admission of the body-worn camera

audio over Hankerson's hearsay objections respecting Enoch and Smith, and in violation of his confrontation clause rights respecting Kalisa. Though the resolution of any of the above issues would not change the result, we may still consider the claims substantively if the issue is likely to recur on retrial. See *People v. Walker*, 211 Ill. 2d 317, 343 (2004). But we find it is inappropriate to substantively consider any of these claims.

¶ 32    First, the jury question issue is not likely to recur on remand, which Hankerson concedes. Second, it would be improper to substantively consider the ineffective assistance of counsel claim because the issue is moot due to the retrial. Hankerson will have the opportunity to move to suppress the firearms before his second trial. See *People v. Bass*, 2021 IL 125434, ¶ 29. Any pronouncement from this court on such a motion's merits could inappropriately complicate that proceeding. See *People v. Daniels*, 346 Ill. App. 3d 350, 356-57 (2004). The better course is to permit defense counsel on remand to determine whether the motion to suppress is appropriate, and if so, to fully litigate the motion, creating a record that can provide for proper review if the need arises.

¶ 33    Finally, we decline to review the evidentiary and confrontation clause-based objections raised by Hankerson on appeal. While it is within our power to consider issues that are likely to recur on retrial, it is far from clear on this record that any of these issues qualify. See *Walker*, 211 Ill. 2d at 343. We again note that the State agrees that the statement of Smith's fear, "would only be admissible at a retrial as a prior inconsistent statement to attack Smith's credibility." Here, we cannot know how Smith and Enoch will testify on retrial, or whether Kalisa will be called. Given the situation, it is best for the circuit court to make evidentiary rulings based on the circumstances that occur on remand, not for this court to render an advisory opinion based on our conjecture on hypotheticals. See *Stitts*, 2020 IL App (1st) 171723, ¶ 33.

¶ 34                                   CONCLUSION

¶ 35    For the foregoing reasons, Hankerson's convictions are reversed, and the matter is remanded

for a new trial.

¶ 36    Reversed and remanded.